this morning is number 23-1939 United States of America against Sonny Sok. May it please the court, my name is Abigail Horn and I represent the appellant Sonny Sok. May I please reserve three minutes for rebuttal. Granted. This case... Somebody didn't like your argument already. It's only uphill from here. This case arises from a routine traffic stop in which the police searched Mr. Sok's car. Mr. Sok argued that there was no probable cause for the search and the district court agreed. However, the government defended with the inevitable discovery doctrine and the district court applied that doctrine ruling for the government. This was wrong for two equally sufficient reasons. First, any hypothetical tow of Mr. Sok's car would not have been lawful. And second, the government failed to prove that any hypothetical tow of Mr. Sok's car would have been inevitable. The merits of this case indeed should be very straightforward. The two specific arguments on appeal were what? That you didn't waive or forfeit, whatever it is, the claim in the district court and that on the merits, their suppression should have been granted. Is that correct? Yes. But were those arguments what was raised before the district court? Yes. Before the district court and indeed the district court ruled on the issue of whether the inevitable discovery doctrine applied because Mr. Sok's car had an expired registration. And we acknowledged that the defense supplemental briefing in the district court was perhaps less than artful. The district court pleadings conflated two closely related doctrines, inevitable discovery and independent source. However, I would also point out that the government, which bore the burden in this case, also had pleadings that I would characterize as less than artful. They told the district court that the inevitable discovery doctrine would apply solely because there was a local policy that purported to allow the tow in this case. And of course, under Opperman and the community caretaking function, that's not true. The Fourth Amendment is a constitutional question and the existence of a local policy does not allow the police to seize a car unless there is a community caretaking function. For example, when the car is a hazard in pleading the flow of traffic or even when it's vulnerable to theft or damage. At the time of this incident in 2019, there was an automatic impoundment of an unregistered car. Is that correct? The local policy purported to state that. However, that policy conflicts with state law and it's frankly not a question of state law or local policy. As this court said in Smith, but not three. What is the state law then? The state law says that the car can be impounded if there's an expired registration and an interest of public safety. And indeed, the local policy has now been updated to comport with state law following the Longinella case. Where in Somerdale Ave was the car stopped? I'm not sure the record tells us that. We only know that it was stopped after turning right onto Somerdale from Oxford Avenue. And the important thing here is that the government's conceded that if Mr. Stock had been arrested, the car could have been locked and left where it was. And so there's no question that it was. It wasn't in the middle of the street. It was not in the middle of the street. I can give you the page number for that. That's Appendix 209, that the car could have been locked and left. So it's tied off that this car was in a fine place to remain. All right. But the crux of your argument, as I understand it, is that this would not have been inevitably discovered because the livestock policy would not necessarily have been invoked. That's the second piece of our argument, Judge Hardiman. The court doesn't even have to get there because it would not have been lawful. All right. But just stick with me on that argument. Where was that argument made in the lower court? Your Honor, you know, again, I'm not here to, you know, defend that our pleadings as perfect. However, the point is that the district court said that whether the car would have been inevitably towed for an expired registration was the primary question before it. And the important thing here is – Well, Officer Mason testified that livestock would have been invoked, correct? Correct. And the district court found that credible, and the district court said because livestock would have been invoked, then the evidence would have inevitably been discovered. Now, what we're doing on appeal here, Your Honor, is a very typical appeal, which is pointing out the government's failure of proof. The government failed to prove that there was any community caretaking function beyond the existence of the policy. The government failed to prove that the three prerequisites would have occurred. Well, those are the reasons for invoking livestock. But Officer Mason wasn't challenged, was he, on that? Well, this would have been the government's burden to make a record. If you look, for example – He made the record by saying – the government made the record by saying, Mason says, I would have invoked or we would have invoked livestock. Now he's subject to cross-examination, right? Why would you have invoked livestock? Would livestock have been properly applied here, et cetera, et cetera? But none of that contentiousness ensued, right? Instead, as I read the record, counsel for Mr. Salk made a totally different argument. Judge Hardiman, what I think is going on here is that the government said, at the beginning of the suppression hearing, we're prepared to go forward. And they did so without having a copy of the livestock policy. And for that reason, they didn't make a record with regard to these three prerequisites. Then when they go ahead and put the policy into the record, supplementally, it appears on the face of the policy that there are gaps in the proof that they made at that hearing. This is, for example, in contrast to the Bradley case where the officer said, we would have towed the car that was on the bank of a snowy highway late at night. And this court said that's consistent with state law because there's an interest of public safety. And it's unrebutted. Here, the officer's testimony is rebutted on the face of the policy itself, which says there are three reasons to cancel. If you can't confirm with police radio, if it's not the priority call, and if the tow truck doesn't arrive in 30 minutes. And so the officer's testimony is rebutted by the policy that the government put into the record in the supplemental briefings. I think the major problem with the government arguing waiver in this case is the level of briefing that we're discussing. So if you look at something like Rose, which goes to a digression with you for just one second, and I realize I'm interrupting you from your train of thought. Back when we had Federal Rule of Criminal Procedure 12E, when we decided the Rose case in 2007-2008, it specifically used the word waives. 2014, it then says that that was the advisory note says that was just an errant choice of a word, and we're now just going to talk about being untimely. So are we talking about waiver or forfeiture? Waiver, an intentional relinquishment of a right. Forfeiture, just you didn't bring it up. And obviously it has different consequences. Waiver means it's gone. And forfeiture means you assess the claim under plain error. Judge Ember, I do think that that amendment taking out the word waiver is significant, and I think for the purposes of this case it means the court shouldn't double down on Rose. What the government is asking is for a real outlier position where we don't only say Rose applies to the motion, Rose applies to the government's response, which would be consistent with the text of Rule 12, which refers to the basis, the party's own basis, but saying we're going to apply that nuclear option, that full waiver for inadvertent forfeitures at the reply level. And I don't see any case that the government cited extending that nuclear option, that full waiver to the reply. So if it was, let's just say if it was forfeiture, where is the plain error here? Yes, Your Honor, under Opperman, there's no community caretaking function in the record. The Ninth Circuit has addressed this in several cases where cars are illegally parked in a residential neighborhood. Cervantes, this is building off Miranda and the other cases. But there are also contrary cases, are there not? I disagree, Judge Ambrose. The government has a long string site. And if you drill down on those cases, most of those cars are blocking something. They're blocking a gas pump. They're blocking a driveway. They're blocking a building. These might all be compelling arguments, but they weren't made. And I guess your response is that, well, the government bore the burden of proof. Is that your argument? That's your right, Judge Hardiman. They weren't made by the government. The party presentation – But the government put in evidence, testimonial evidence that livestock would have been invoked. And Salk contended in his supplemental brief that the livestock policy had no effect on the legality of the search because Officer Mason, quote, did not act pursuant to, end quote, the policy. So the argument was Mason says they would have invoked livestock. And Salk's response is they didn't invoke livestock, which is sort of a silly argument because the whole point of inevitable discovery is to address a counterfactual where something didn't happen and for the court to consider what would have happened, right? Right. That argument would have gone to independent source. That was an error. But the important thing to remember here is that the government made its record before that supplemental filing. It wasn't anything about that, you know, inadvertent error in the supplemental filing that affected the government's record. Well, but the supplemental filing, doesn't Dowdell speak to that? I mean, it's similar to what happened in Dowdell. No, the analogy would be in Dowdell. So in Dowdell, the government waived the argument about Wilson extension. Can they open the door and therefore can they go into the car without reasonable suspicion? That's different that that was waived when this is forfeiture, but otherwise it's the same. No, what would be is if Dowdell had addressed the defendant's reply in which it misconstrued the Wilson extension argument. The defendant didn't understand the Wilson extension. He filed some reply and then all of a sudden the government gets a gotcha and we get to win on Wilson extension because the defense messed up their reply. There's no basis in Rule 12 for that. Rule 12 refers to the party's own basis. The plain meaning of that term is the foundation, the starting point. The government's foundation here is inevitable discovery. It's not Mr. Socks on reply. Replies aren't even required under Rule 12 and the local rules. Another example would be, for example, in Dupree and Bradley where the government comes in and makes some argument about the fruits of the poisonous tree doctrine. The government's waived it. The analogy here would be the defense misconstrues the fruits argument, messes something up in a reply or a supplemental filing, and all of a sudden we've said the reply is a gotcha. Now the government gets to win on their fruits argument because of the reply brief. And there's no basis in Rule 12. There's no basis in precedent for that. And, frankly, there's no prejudice to the government. The government here was asked at the hearing, what are your grounds? The government said at Appendix 92 we're prepared to go forward, and within pages they were at the expired registration. They knew exactly what they were doing, and they made the record they made without the supplemental filing. That came later. You're right about reply briefs, but are you arguing that SOC's counsel did not have an opportunity to challenge Mason's testimony that livestock would have been invoked? No, what we're arguing is that after the motion, the response, and the hearing, it's in the district court's hands. They have the motion at that point. Had the district court ruled from the bench, for example, I don't think we would be having this conversation about waiver. All that happened is now there's more grist for the mill because the parties filed more things. But that doesn't change the fact that the issue was fully teed up and fully in the hands of the district court at the end of the hearing. Waiver isn't like, for example, ping pong, where it goes back and forth three times, four times, five times. No waiver. It's clear there's no waiver. There was no intentional relinquishment, to Judge Ambrose's point. There was no intentional relinquishment. But it sure looks like a forfeiture. So that's why the government needs to find something in Rule 12 that should say this nuclear option, this absolute waiver would apply, and it's simply not in the text. And remember, there are countervailing values here. As the Supreme Court has reminded us in Rosales-Morales and Olano, this court is an error-correcting court and has a function to play in ensuring fairness and accuracy, and there are public legitimacy concerns when the court declines to reach issues. The court should reach the issue here and should rule for Mr. Salk on the straightforward merits. But we're an error-correcting court in this context of a forfeiture when there is an error that is plain and that affects substantial rights, and there's a way to go on. But how plain is the error here? It's absolutely plain, Judge Ambrose. If the government conceded that the car could have been locked and left where it was, it wasn't a hazard, it wasn't impeding traffic, there's no record that it was vulnerable to theft or vandalism. You simply can't lawfully tow a car for an expired registration. That's a paperwork error that can be corrected in minutes online. And I think, frankly, the people of Philadelphia who park their car on the streets would be surprised to hear that their car could be towed solely for an expired registration with no community caretaking function at all. Opperman's a case from the 70s, I think 76. This has been the law for a long time. This court said in Smith that the test is reasonableness and there's nothing reasonable about towing a car that could have been locked and left exactly where it was. If we think about the privacy interests here, they are substantial. This isn't somebody's home, but when we're referring to a car, this may be their second most valuable asset. And we're talking about not only looking at a car, taking it away, potentially selling it at auction, which happens, I think, within 15 days or something like that in Philadelphia. And so it would not be reasonable to do that solely for an expired registration. Thank you, Ms. Ford. Mr. Salzberg. Good morning, Your Honor. May it please the Court, Robert Salzberg on behalf of the government. We are dealing with waiver here, and I'd like to be specific that the defense is presenting three arguments to the Court, none of which were made in the district court, and a couple of which are really quite significant. You mean it's an intentional relinquishment? Well, Rule 12 does not speak of intentional relinquishment. Rule 12E, as we just said, has been erased. It now talks about timeliness, and the advisory note says we made a mistake when we used the word waives. So I would submit that the current version of Rule 12, to address Your Honor's question, is really no different materially from what existed before. What happened before, now I can't improve on Judge Hardiman's scholarly opinion in Dowdell, but my perspective is that Rule 12 used the word. Judge Fischer thought you could dissent. But he's an Article III judge, so that's how it goes. Rule 12 used to use the term waiver. And what the committee explained in taking out the word is they just want to avoid confusion because waiver normally refers to an intentional relinquishment. But what Rule 12 left was exactly what existed before. Rule 12 says a defense must be raised before trial. Unless for good cause. Unless for good cause. And that's exactly the rule that existed before. So all the committee is saying is that we don't want to confuse this with the intentional relinquishment stuff that's going on in some other venue. But really we have the same rule. You have to raise this defense unless you show good cause. And there's been no showing of good cause here other than to say, sorry, we missed it. I've tried that argument of good cause before this court before. It hasn't fared too well. And I don't know that it will fare well here. My friend, Ms. Horn, is an outstanding advocate, but she finds herself in the position here that I have found myself in before. This is appellate advocacy. The smart lawyers like Ms. Horn and Mr. Schweitzer show up on appeal and they identify these issues that were not presented before. The three arguments that are being made, the first one is, it's unconstitutional to tow a car on the highway that's unregistered. That's a significant argument. It wasn't made to the district court. The second argument that's being made is it's a violation of state law to tow an unregistered car on the highway unless it's posing some risk to public safety. That argument wasn't made. And then finally, that the government had to show what exactly was happening with that officer and the towing situation at that moment in order to show inevitable discovery. That argument was not made. Now, what the defense has suggested is, well, it's the government's burden. The government raised this issue, so they have to think of everything that might come up and address it. But the government does have the burden to show the inevitable discovery rule applies. Absolutely, and it did that, as in Mundy, as in Bradley, by having the officer testify that he would have implemented the livestock policy. You know, we could go through lots of cases. I just want to highlight one which I think serves as a good example, and that's the Lockett case from back in 2005. That's how these matters ordinarily proceed. In the Lockett case, it was a search of a gentleman's luggage. The man files a motion to suppress. The government comes in and says, consent. Here's the information. He consented. We asked him if he could search his luggage. He said, okay. In the district court, the defendant says, well, wait a second. My consent was not voluntary. That's litigated. The district court disagrees. On appeal, the defendant has a new response to the government's consent position and says, well, the search exceeded the scope of the consent. And this court says, waived. You can't make this new argument. That's exactly what we have here. If we decide that maybe what change took place in Rule 12 in 2014 really leads us to believe that we're in forfeiture land, then we are dealing with plain error. But your argument would be that there is no plain error. Isn't that correct? Certainly, Your Honor. And I could go through, again, those three issues. With respect to the unconstitutionality of towing an unregistered vehicle, there's no precedent that says that. It may be a reasonable argument, as this court has said, with respect to plain error. It may be something that this court will consider one day. But no authority has been submitted that says that. And, in fact, it's probably incorrect. I mean, what Colorado v. Berdeen says, the Supreme Court case on inevitable discovery, is that the Fourth Amendment, in terms of the probable cause requirement, applies to criminal investigations. It does not apply to administrative actions, such as an inventory search. And, therefore, you don't have a probable cause requirement. You have a reasonableness requirement. And what the Supreme Court emphasized in Berdeen and other cases is... But why was the livestock policy changed here to put into play now, as of today, a public policy or a public safety? Well, clearly the authorities in Philadelphia read state law and believed, in the better course, that they should have this public safety requirement. But that wasn't there in 2019. What the Supreme Court had instructed before... In fact, in 2019, I think, on Appendix 209, at the district court level, the government conceded that there was no public safety concern. Isn't that correct? Actually, it wasn't addressed. I agree it's not in the record as to where the car wound up. Page 209 is a defense brief that's being cited. There was no statement on it by the government. But at the time, the Supreme Court had held, in Berdeen and other cases, that there have to be standardized criteria, that the officer can't have unlimited discretion. And so city authorities at that time, in their wisdom, gave a very clear directive, no discretion. If it's unlicensed, you tow the car unless the licensed owner is there. But it's possible that a policy like that, without discretion, could be unreasonable under the Fourth Amendment. It could be, but I would suggest that... That wasn't joined and litigated here. Exactly. And I would argue, it's definitely not plain error, because it's not plain, but I would also argue that that's not right, that it is reasonable, when you have, especially in a city like Philadelphia, where you have a significant problem with unregistered and abandoned vehicles that cause all sorts of public safety concerns. This was not an unreasonable policy by city authorities who were trying to comply with the federal constitutional mandate of not giving discretion to officers, of saying, if it's an unregistered car, it's on the highway, tow it. Well, on the highway, do you challenge Ms. Warren's statement that it was parked on Somerdale and not in the middle of the street? No, and of course, this would apply to a parked vehicle, but as we've explained in our briefs, that is... It might be unreasonable if a city has a policy of, you know, feathering the nest of their tow company friends by immediately towing every car that breaks down, if it's parked in a lawful parking spot. That might be unreasonable in the Fourth Amendment. It may be, and we now have a new policy that probably prevents that, but we would welcome the chance to litigate this. If this argument had been raised, certainly we could have called witnesses, we could find out exactly what the city is doing and how this is implemented. But what we had instead was a policy that said, no discretion, tow the car. The officer said, this has been the policy for the 17 years I've been on the force. And he said very clearly to the district court, this is what I would have done. This is the same as Mundy. Mundy was a car that was towed because it was an unregistered vehicle, and this court didn't hesitate to apply the inevitable discovery rule. With respect to the second argument that's being made, that under state law... Can I just ask a general... Why is impounding a car solely on the ground that it lacks a valid registration consistent with the Fourth Amendment? It is a community caretaking function, Your Honor. You have a car that cannot legally be driven, and therefore it's going to... But if there's no community caretaking function here, where, again, I'm looking at 209, the vehicle could have been locked and left at the location of the traffic stop while Sauk was taken into custody based on the warrant. Again, that's a statement by the defense. The government did not present evidence that reflects on that one way or the other because the argument wasn't made. If... Okay, it's a statement, but it looks to me like there's... Where's the community caretaking function in this particular case? I would submit, Your Honor, that if... Again, I would prefer to litigate this in the district court where we could present evidence. But standing here right now, I would simply say that unregistered and abandoned vehicles are a significant problem in an urban environment, and it is reasonable for city authorities to act to remove cars that are unregistered and are not going to be moved and are going to sit there and pose a hazard. Again, I welcome the chance... And yet the policy has been changed. And yet the policy has been changed, which may be reasonable as well. There are... Reasonableness is not a set point. And so it may be reasonable as well to say that if it doesn't pose a public safety concern for a specific vehicle, that you can leave it where it is. Again, on a cold record, that's the best I can offer, and I think these are reasonable arguments. But they certainly underline that there's been no showing of plain air, putting aside, call it waiver, calling not raising the defense, call it whatever you want under Rule 12, putting aside the fact that this improperly was not raised. I'm going to go back to the Dow-Dow case just briefly. That was Judge Hardiman, Judge Porter. You were the majority in that case. And the court wrote, it would be unwise to categorically exclude waivers or forfeitures in suppression hearings. Doing so would violate the party presentation principle, the bedrock of our adversarial system. That principle ensures that courts decide only those issues argued by interested and motivating litigants. We didn't have the chance to argue this issue and to present evidence on this issue. And the same goes with regard to this issue of state law. It is a question as to whether you can even have suppression based on a violation of state law. Really, I would submit it's only the federal constitutional issue that matters. But state law was not completely clear as to whether certainly the state Supreme Court had addressed unlicensed drivers, but not unregistered vehicles. Now, the city has come along now, three years after this search, and extended that rule to unregistered drivers as well. But that didn't exist at the time either. And in fact, I point out, the Laganella case, which is the state Supreme Court case that said, you don't tow an unlicensed driver's car unless there's a risk to public safety. There's a really interesting footnote there, footnote five. It says, although the Commonwealth asserts in its brief that the Harrisburg Police Bureau has a policy maintaining that the vehicle be towed, the record does not contain a copy of this towing policy. Thus, we leave for another day the question of whether such a policy would be valid in light of the specific limitations of Section 6309.2. So the state Supreme Court is telling us this is not plain error. They haven't addressed it as of the time this case is litigated, and even as of now. At the outset, Mr. Salzberg, you said that this was a waiver. If we disagree with you about that, do we need to have an en banc review of the issue in light of SCARFO? You know, SCARFO relies on Rose, and Rose was decided seven years before the 2014 amendment. SCARFO came after the 2014 amendment. What do we do with that? I don't believe it's necessary, Your Honor, because, again, I think this Court can interpret the new rule and see whether it abrogates in any way previous Third Circuit precedent, and I have submitted it does not. It says the same thing in different language, and what it says in very declarative language is you must raise a defense unless you have a showing of good cause. I'm just skittish about your suggestion that it raises the same thing with different language because for a long time now this Court has been trying to clean up, I would argue, clean up the use of waiver and forfeiture, which the Supreme Court on several occasions had indicated had been used somewhat cavalierly, interchangeably, and I think this Court has written a lot of opinions in the last decade or two explaining, I think, the difference between waiver and forfeiture. So why don't our efforts to clarify the jurisprudence weigh against the suggestion that you just made? Well, I guess what I'm saying, you know, I'm always eager to appear before the en banc Court, but I think what I'm saying is that this can be done by the panel. The panel can interpret the new rule and see that, yes, it's important not to throw, the Supreme Court has told us over and over, don't throw around terms like waiver casually and imprecisely. And a panel could clear that up by saying, all right, we're not going to use the term waiver with regard to Rule 12, but we're in the exact same place we were before, and I would suggest that the Advisory Committee is telling us that, that the Advisory Committee doesn't say we're making a profound change here. Go ahead. The Advisory Committee said Rule 12, quote, intended to relinquish a defense objection or request that wasn't raised in a timely fashion. That sounds to me like they are walking away from what we traditionally think of as waiver. I would suggest they're walking away from the use of the term, but they're not walking away from the effect and from the rule that they have long set, which is you have to raise the issue or it's subject for good cause. What this Court has said before, and I think it's still true, is that Rule 12 stands on its own. Rule 52, the plain error rule, does not apply. We take Rule 12 as it is. And as it now stands, again, I know I'm repeating myself, but it's the same effect as it was before. You have to raise it unless it's a showing of good cause. It was not raised here. Wouldn't a showing of good cause include the traditional plain error progs? No, I don't think so. I think this gets back to the – If I were in Ms. Horne's shoes, I would stand up and say we have good cause here, and the reason we – not in this particular case. I'm talking about representing the defendant in a case. But a lawyer representing a defendant in a case, I think, could stand up and say the reason we have good cause is because the district court made an error here. It was a grievous error. It was plain. It affected substantial rights. Why wouldn't that be subsumed within good cause? Good cause is a rather fungible cause. Your Honor, I have made that argument unsuccessfully to this court, where the shoe is on the other foot. Wasn't that in the waiver era rather than the forfeiture era? No. So Dupree is a great example of that, of where the government lost its case because – Dupree was before 2014. It was. But, again, I'm – I'm familiar with that one, too. Sure. I stand on the view that we're operating under the same rule, and it's the same reason the government lost in Dowdell, was because the government had not pursued the argument at the correct time. The government waived it in Dowdell. Correct. That's true. The government expressly – the district judge invited, again, the argument, and the government specifically disavowed it. That's true. That's about as clear a waiver as you can have. That's true. It's not on all fours. But, Your Honor, in answer to your question, can good cause simply be we made a legal error here? I don't know of any precedent saying that, and it would pretty much – I'm not suggesting it could be any legal error. What I'm suggesting is that the phrase good cause – and, again, we don't know. We have to get the cases. But I'm suggesting that there's a chance that the phrase good cause is capacious enough to include things like cases where the plain error standard would be satisfied. I am not aware of any authority that having a plain error, we made a really bad mistake of law, is, therefore, your good cause, that lets you off the hook. And I think that Your Honor's statement in Dowdell regarding the party presentation principle speaks directly to that. The court – Good cause is strictly a timeliness issue. It's not just – The reason we didn't make the motion was, you know, I got in a car wreck on the way to filing the motion or, you know, something. It's just a timeliness issue. It could be ineffective assistance of counsel. There are many different things that could happen. But simply the fact that it's an error, that the party did not advance, I think is defeated by the language in Dowdell and by the recent Supreme Court case regarding the party presentation principle on which Dowdell relies. Finally, if I could just take one minute on the argument that the government didn't – I'm sorry. Let me just go through that again. I think it's tricky. Sinanang Smith makes a strong statement about the party presentation principle. But any time a lawyer fails to make an argument inadvertently and we're in forfeiture land rather than waiver land, there's this escape hatch of a plain error review. And your argument is that that escape hatch doesn't – as I understand it, correct me if I'm wrong – that escape hatch doesn't apply here, it's not available to the defendant because of the language of Rule 12? Yes. I don't believe the term good cause in Rule 12 embraces plain error. And speaking directly to the Third Circuit's precedent, that Rule 52 is not applicable here, which is the plain error rule. There has to be a showing of good cause by the defense other than, sorry, we missed it. All right. But Rule 52 is not available. That's straight out of the court's opinion in Scarfo, correct? Correct. That was the next line in Judge Jordan's opinion. There's a lot going on in that opinion. But this was a short paragraph that I recall said something to the effect that – What it says is that Federal Rule of Criminal Procedure 12 requires that a request to suppress evidence be raised by pre-trial motion, citing 12b.3. As a result, a suppression argument raised for the first time on appeal is forfeited. Then the next part, and we do not consider it even under Rule 52b's plain error standard. So one could argue that that's a bit confusing. It's either going to be intentional relinquishment waiver or it's going to be 52b, but this kind of marries the two, and maybe we need to clarify that. And it cites Scarfo, which specifically referred to the waiver language that preceded – It cited Rose. Excuse me. Thank you. Scarfo cited Rose there, which preceded the 2014 amendment. It did. But the passage, Your Honor, that Judge Ambrose just read is pretty much identical to what the advisory committee came up with. Maybe they were influenced by this court's rulings. Your Honor just read a statement that a defense must be raised before trial, and Rule 52 is not applicable. That's exactly the current language of Rule 12. And all the advisory committee said is that we don't want there to be any confusion with intentional relinquishment. They're basically saying we don't require intentional relinquishment. That's why we're taking out the word. But I suspect, because I was on that panel, I think, was that you're trying to do a workaround, Rose. I'm sorry. Do a workaround. In other words, Rose talks about waiver. It still hasn't been in any way brought into question. But 2014, the law or the rule did change. Rule 12e was erased. And now you have to have something called good cause. And maybe it's time to say that in this case, if you don't bring it up, it's a forfeiture. So if I could just try one more time, Your Honor. The confusion that existed before is that there's this concept of waiver, which we know requires intentional relinquishment. That's Olano. And that was confusing in the context of old Rule 12, because Rule 12 also used the word waiver, but didn't require intentional relinquishment. It simply said – Well, they said in 2014 it was a – So in 2014, the advisory committee cleans it up. They take out the word waiver to reinforce that we're dealing with something different. It doesn't require intentional relinquishment. That's why we're taking out the word waiver. But you must raise this defense before trial. It's the same rule that applied before. I think the committee very neatly clarified things, and this Court certainly may do so again. But back to Judge Hardiman's question, what is good cause? So good cause is something that existed before also. And good cause, the same term applied. Waiver, what Rule 12 used to call waiver, which we know really wasn't traditional waiver, it said could be excused by good cause. Good cause is a reasonable excuse by the party as to why it did not timely raise the issue. No excuse at all has been presented here other than, sorry, we missed it, and it's a legal error. And that has never been deemed sufficient as good cause. Again, just very quickly, the government did meet its burden with regard to inevitable discovery. The officer clearly testified he would have implemented it. There's never been a requirement that the government then prove that exactly what was happening during that half hour in the entire city with regard to all police assignments, all towing assignments, to show that everything would have played out. This is Mundy. This is Bradley. What the precedent requires is that routine procedures, the government shows by a preponderance of the evidence, that routine procedures would have led to the seizure, and that's exactly what the officer testified. When you open by saying we are dealing with waiver, as I understand it, what you're saying is that there is a kind of waiver that doesn't require an intentional relinquishment, traditional waiver. It kind of looks more like forfeiture. But under Rule 12, specifically, it still operates like a waiver. That's exactly right, and I plead guilty to making the same mistake of using that quick umbrella term at the beginning, but Your Honor has just stated our position precisely. Thank you very much, Your Honor. Thank you, Mr. Zauser. Let's hear the rebuttal from Ms. Warren. Thank you. I'll try to tick through. First of all, the government made no argument in its brief with regard to any of the remaining prongs of plain error review, prongs two, three, or four. So if we were on then, the government has waived any argument. As this Court knows, an issue of first impression can be plain. That's the Stinson case. Waive the forfeited. Failure to brief an issue on appeal is a whole different doctrine, which would apply here. And we can affirm for any reason stated on the record. Or any reason not waive, which is Holt v. Snapple. But an issue of first impression can be plain on prong two. That's Stinson. We have Opperman from 76. We have Cervantes from the Ninth Circuit from 2012. We can look at analogous cases from other circuits to establish plain error. So that would be established. The government has known since 2008, at least, in the Felder case, how to make this kind of record in the Eastern District. They've had a long hearing about tow truck delay in 2008, and they chose not to do that in this case. It wasn't our job to point out their failure. But for counsel at the district court level, would there be a possible ineffective assistance of counsel claim? That could be good cause. The government has said that was good cause here. Good cause isn't only about an excuse. For example, General. Give us some examples of good cause besides the narrow one advanced by the government. All right. So we cite a few cases in our brief. General refractories, Experian. This comes up often in the civil case where there's a narrower plain error doctrine, and so this court is quicker to go to good cause. A pure issue of law fully briefed can be good cause. That's whether the tow would be lawful where we have concession. It can be good cause. Criminal law is different. Well, I am citing this court's – I think you'd agree. I think, Judge Hardiman, what criminal law differs is that there's even more of an interest in reaching the issue, that the default in criminal law is that the court reaches issues on plain error. Well, maybe, but it's also the case that there are certain timelines that need to be met to make sure that the criminal defendant is afforded a fair and just proceeding every step of the way. A fair and just proceeding requires that the arguments be raised and joined and litigated at the appropriate time. The important thing that's happening here is the government is arguing for an extension to require a reply. The fair and just proceedings happened here, the motion, the response, and then they're arguing that the reply, this extra step, is where the waiver comes in. This isn't Rose. This isn't any of this court's precedent. It isn't Dowdell. It isn't Dupree. This is a waiver at an entirely third level of the back and forth. Let's say we agree with you it's not a waiver, but I don't know where that gets you because there's testimony in the record from Officer Mason that livestock would have been invoked. You concede that, right? This court, if you want to look for the exact precise site, in Smith Footnote 3, the court says this isn't an issue of state law. This isn't an issue of local policy. This is an issue of reasonableness. It's a community care taking question under the Fourth Amendment. Can I just go back to Judge Hardiman's point? Sure. What is good cause in your view? I think good cause can be established for any number of reasons. A grievous error, as Judge Hardiman asked the government about, it can be established for a pure issue of lawfully briefed. It can be established for an issue in the public interest. For example, there was an insurance contract language that comes up repeatedly. This court said that's good cause to answer the question. Here, answering the question for drivers could be good cause. This court has found good cause for issues that are important to the district court, to have clarity. Car searches are regularly occurring in the district court. Ineffectiveness could be good cause in this case also. So we brief good cause in our papers, and the court could certainly find that it exists in this case, based on the absolute error of law that took place here, which is clear on the face of the record. There aren't any new facts. The only facts we have in this case are we have an expired registration, a car that could have been locked and left where it was, which incidentally is the government's own briefing. That's ECF 30, the government's supplemental briefing, not the defense briefing. So really those are the only facts, and the policy, which says there are these off-ramps. There's three reasons to cancel. There's no prejudice to the government. We have a closed factual record and a pure legal issue in which there was an error, because the district court told the government, contrary to Opperman, contrary to Smith, that the officer could tow purely on the basis of a local policy. It's not about the local policy. It's a Fourth Amendment question about reasonableness, and towing this car that could have been locked and left where it was was not reasonable. We appreciate the argument, Ms. Warren. We have no further questions. We'd like a transcript of the argument, and the court will take it.